NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

In re the Matter of:

MICHELE RENEE CHANDLER, *Petitioner/Appellee*,

*v.*

CHRISTOPHER MICHAEL ELLINGTON, *Respondent/Appellant*.

No. 1 CA-CV 13-0648 FC
FILED 6-18-2015

---

Appeal from the Superior Court in Maricopa County
No. FC2009-005572
The Honorable Roger E. Brodman, Judge

**AFFIRMED**

---

COUNSEL

Christopher M. Ellington, Mesa
*Respondent/Appelant*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge John C. Gemmill joined.

---

**W I N T H R O P**, Judge:

¶1         After approximately eight years of marriage, Michele Renee Chandler ("Mother") served a petition for dissolution on Christopher Michael Ellington ("Father"). Following entry of a dissolution decree, the family court awarded Father and Mother joint legal decision-making authority for their two children. Father contends the family court abused its discretion by awarding Mother final authority in the event of a decision-making conflict. Finding no abuse of discretion or legal error, we affirm.[1]

## FACTS AND PROCEDURAL BACKGROUND

¶2         The parties married in 2001 and are the parents of two minor children. In 2009, Mother served a petition for dissolution of the marriage, and both parties requested sole legal decision-making authority for the children. The family court's 2010 dissolution decree awarded Mother sole legal decision-making authority and required Father to pay child support. The decree also granted Father unsupervised parenting time on alternate weekends and holidays, subject to his adherence to a random drug testing regimen.

¶3         A series of motions followed, prompted in part by Mother's relocation with the children to Alabama and eventual court-ordered return in 2011. In addition, each party obtained orders of protection against the other party, and claimed at various times that the other party was endangering the children's health. The family court appointed a Best Interests Attorney ("BIA") for the children.

¶4         Both parties moved for modification of the dissolution decree's legal decision-making and parenting time orders, and Father filed

---

[1]    Mother did not file an answering brief. However, because legal decision-making - which affects the best interest of the children - is at issue, we do not treat this omission as a confession of error. *See Hoffman v. Hoffman*, 4 Ariz. App. 83, 85, 417 P.2d 717, 719 (1966).

a motion to modify child support. Mother, claiming Father had violated orders and endangered the children, requested that the family court continue to order drug testing for Father, require supervised parenting time, refer Father's child support arrearages to a Title IV-D commissioner, and order Father to undergo counseling. Father, citing the children's "deteriorating" physical and emotional conditions and concerning behaviors, requested (1) an emergency award of joint or "full" legal decision-making authority with designation as the primary residential parent, and (2) a finding of contempt based on Mother's alleged violation of parenting time orders. At the time, the parties did not dispute that a substantial and continuing change materially affecting the children's welfare had occurred.

¶5 After referring the child support issues to a Title IV-D commissioner, the family court held two evidentiary hearings on modifying legal decision-making and parenting time. The first hearing, held February 13, 2013, addressed Father's request for emergency modification of legal decision-making and parenting time and his notice of violation of a court order regarding parenting time. Mother was represented by counsel, and Father appeared *pro per*.

¶6 After taking the matters under advisement, the family court issued a minute entry filed April 16, 2013, denying any claim for relief by Father based on his notice of violation of a court order. As to Father's emergency motion to modify child custody and decision-making authority, the court found no evidence of mistreatment of the children by Mother as alleged by Father, and also noted that Child Protective Services ("CPS")[2] had found no substantiation for Mother's allegations of mistreatment and neglect against Father. The court further noted that a week on/week off schedule over the summer of 2012 had "reduced conflict between the parties" and "resulted in a period of relative calm." Accordingly, the family court increased Father's parenting time to every other week but found no basis to alter Mother's sole legal decision-making authority. The family court also agreed to revisit certain issues at the second hearing, including whether the children had been exposed to inappropriate conduct and whether Father had violated parenting time orders. Additionally, the court

---

[2] In May 2014, CPS was removed as a division of the Arizona Department of Economic Security ("ADES") and replaced by the Department of Child Safety, an entity outside of ADES. *See* 2014 Ariz. Sess. Laws, ch. 1, §§ 6, 20, 54 (2d Spec. Sess.). We refer to the former CPS in this decision.

noted that Mother had sufficient income to pay attorneys' fees and ordered her to pay one-half of the BIA's fees.

¶7        Approximately six months later, on August 2, 2013, the family court conducted a one-day evidentiary hearing to address several additional motions by the parties and any carry-over issues. The motions primarily concerned legal decision-making, parenting time, and alleged violations of the court's prior orders. Both Mother and Father appeared *pro per* and testified, and the BIA addressed the court. The parties entered an agreement pursuant to Rule 69, Ariz. R. Fam. Law P., providing for equal parenting time, and Mother expressed support for a joint legal decision-making order. Consistent with the BIA's recommendation, the family court awarded the parties joint legal decision-making authority, with Mother having final authority in the event of a conflict. The court also referred the matter to a Title IV-D commissioner, *see* Ariz. R. Fam. Law P. 3(B)(10); 42 U.S.C. §§ 651-669b, for new child support orders as applicable in light of the court's new orders, and denied all other requested relief. Father timely appealed, and we have jurisdiction pursuant to A.R.S. § 12-2101(A)(2) (Supp. 2014).

## ANALYSIS

¶8        Father contends the family court erred in awarding Mother final authority in the event of a legal decision-making conflict. He argues a new hearing is warranted to consider issues unaddressed by the family court, as well as any new evidence concerning the children's best interests, in order to resolve this question. We disagree.

### I.        *Standards of Review*

¶9        We review the family court's legal decision-making ruling for an abuse of discretion. *See Owen v. Blackhawk*, 206 Ariz. 418, 420, ¶ 7, 79 P.3d 667, 669 (App. 2003). A court abuses its discretion when it commits an error of law in making a discretionary decision, reaches a conclusion without considering evidence, commits some other substantial error, or makes a finding lacking substantial evidentiary support. *Flying Diamond Airpark, L.L.C. v. Meienberg*, 215 Ariz. 44, 50, ¶ 27, 156 P.3d 1149, 1155 (App. 2007) (citation omitted). Nevertheless, our duty "does not include re-weighing conflicting evidence." *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16, 219 P.3d 258, 262 (App. 2009) (citation omitted); *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347-48, ¶ 13, 972 P.2d 676, 680-81 (App. 1998) (deferring to the trial court's determination of the witnesses' credibility and the weight accorded to conflicting evidence); *Hamilton v. Mun. Court*, 163 Ariz. 374, 378, 788 P.2d

107, 111 (App. 1989) (holding that the appellate court does not weigh the evidence; instead, the court decides whether substantial evidence supports the decision).

**¶10**     Because Father requested findings of fact and conclusions of law, the family court was required to clearly state the basis for its conclusions. *See Kelsey v. Kelsey*, 186 Ariz. 49, 50-51, 918 P.2d 1067, 1068-69 (App. 1996); Ariz. R. Fam. Law P. 82(A). This court will affirm the family court's factual findings absent clear error, *In re Marriage of Berger*, 140 Ariz. 156, 161, 680 P.2d 1217, 1222 (App. 1983), and will give due regard "to the opportunity of the trial court to judge the credibility of witnesses." Ariz. R. Fam. Law P. 82(A). We review *de novo* the court's application of statutes. *Nolan v. Kenner*, 226 Ariz. 459, 461, ¶ 4, 250 P.3d 236, 238 (App. 2011).

>    *II.     The A.R.S. § 25-403(A) Findings*

**¶11**     In challenging the family court's legal decision-making order, Father argues the evidence at trial did not support the court's best interest findings pursuant to A.R.S. § 25-403(A) (Supp. 2014). According to Father, the family court also exhibited a judicial bias against him; based its award on Mother's provision of pharmaceutical and pharmacological care for the children, as opposed to use of holistic or homeopathic methods; engaged in libel and slander against Father; mischaracterized Father's testimony; considered "fraudulent and incomplete" testimony; failed to consider pertinent evidence; misapplied the law; improperly relied on the BIA's opinion; and failed to fully address issues identified but not fully resolved in the first modification hearing.

**¶12**     In a contested case, a court must make specific findings on the record about the relevant factors and the reasons why its award is in the children's best interest. A.R.S. § 25-403(B). The family court's twelve-page order includes detailed findings relating to all the A.R.S. § 25-403(A) factors[3] with citations to relevant evidence. We conclude the family court

---

3     These factors are: (1) each parent's relationship with the children; (2) the interaction and interrelationship of the children with the parents, siblings, and any other person affecting the children's best interest; (3) the children's adjustment to home, school, and community; (4) the children's wishes regarding legal decision-making and parenting time; (5) the health of the parties involved; (6) which parent is more likely to allow the children frequent, meaningful, and continuing contact with the other parent; (7) whether one parent has misled the court to cause unnecessary delay or

did not abuse its discretion by weighing some evidence more heavily than other evidence. The court gave Mother final decision-making authority because "Mother is more open to addressing [the older child's] issues, and [] Father's rigid thinking would not, in the long run, be in the children's best interests." Likewise, the court expressed concern "that Father's rigid positions on some issues relating to the children would, if granted sole decision-making, exclude Mother from the process."

¶13 Our review of this decision is limited by the absence of the hearing transcript. As the appellant, Father was required to supply a complete record to this court, including a trial transcript. *See* ARCAP 11(b)(1) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a certified transcript of all evidence relevant to such finding or conclusion."); *see State ex rel. Dep't of Econ. Sec. v. Burton*, 205 Ariz. 27, 30, ¶ 16, 66 P.3d 70, 73 (App. 2003) (upholding the denial of a modification of child support in the absence of a hearing transcript). Because Father failed to provide the transcript, we are required to assume the missing record supports the family court's findings and conclusions. *See Baker v. Baker*, 183 Ariz. 70, 73, 900 P.2d 764, 767 (App. 1995). In view of that assumption, and the clear basis for the family court's analysis under Rule 82(A), we find no error. *See id*.; *see also Romero v. Sw. Ambulance & Rural/Metro Corp.*, 211 Ariz. 200, 203, ¶ 4, 119 P.3d 467, 470 (App. 2005) (holding that unsupported arguments without the relevant transcripts are insufficient for this court to meaningfully review the trial court's rulings or overcome the presumption that those rulings are supported by the record).

¶14 We are also unable to fully address most of Father's other arguments on this limited record. Without a transcript, we cannot determine whether Father objected to the proceedings on the grounds he raises on appeal. Further, we cannot assess whether the family court failed to consider evidence, improperly admitted evidence, precluded presentation of evidence on issues identified in the first custody hearing, violated court rules, or committed any of the other transgressions alleged

---

expense or to obtain a preferential ruling; (8) whether there has been domestic violence or child abuse; (9) the nature and extent of coercion or duress employed by a parent in obtaining a parenting time or legal decision-making agreement; (10) whether the parents have complied with education program requirements; and (11) whether either parent was convicted of false reporting of child abuse or neglect. A.R.S. § 25-403(A)(1)-(11).

by Father. Moreover, given the non-specific and conclusory arguments Father presents on appeal, we have no basis for disturbing the family court's ruling. *See Adams v. Valley Nat'l Bank of Ariz.*, 139 Ariz. 340, 343, 678 P.2d 525, 528 (App. 1984) (stating that an appellate court may decline to perform an advocate's role and search the record to substantiate an appellant's claim); *see also Gen. Elec. Capital Corp. v. Osterkamp*, 172 Ariz. 191, 193, 836 P.2d 404, 406 (App. 1992) (stating that a judgment is presumed correct and the appellant bears the burden to show otherwise); *see generally* ARCAP 13(a)(6) (requiring a party to support contentions on appeal with specific references to the record and legal authorities).

**¶15** Father does specifically argue the family court misquoted his testimony when finding that Father "stated he would not allow his children to take medications." He concedes, however, that he opposes "flu shots and vaccinations." In the absence of a transcript, we presume the record supports the family court's finding. *See Baker*, 183 Ariz. at 73, 900 P.2d at 767.

**¶16** Even assuming Father's testimony is accurately reflected in his opening brief, the family court was not required to accept it. *See Standage v. Standage*, 147 Ariz. 473, 479, 711 P.2d 612, 618 (App. 1985) (recognizing the family court is in the best position to assess the credibility of witnesses, and the appellate court gives deference to its determination), *superseded in part by statute as stated in Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 8, 333 P.3d 818, 821 (App. 2014); *Estate of Reinen v. N. Ariz. Orthopedics, Ltd.*, 198 Ariz. 283, 287, ¶ 12, 9 P.3d 314, 318 (2000) (stating that the superior court is not bound to accept even the uncontradicted evidence of an interested party). On this limited record, we conclude the family court did not err in awarding the parties joint legal decision-making authority and granting Mother final decision-making authority.[4]

---

[4] Nor can we agree the family court defamed Father in describing his position on administering medications to the children. Moreover, even if we were to conclude the statements about Father were defamatory, "[a] judge or other officer performing a judicial function is absolutely privileged to publish defamatory matter in the performance of the function if the publication has some relation to the matter before him." Restatement (Second) of Torts § 585 (1977). Because the family court made statements about Father's stance on medications in the course of making a legal decision-making determination, the privilege applies and precludes a defamation claim. *See id.*; *Owen v. Kronheim*, 304 F.2d 957, 959 (D.C. Cir.

*III.     Judicial Bias*

**¶17**        Although Father attributes adverse rulings to judicial bias, we must presume the family court judge is free of prejudice and bias.  *State v. Ramsey*, 211 Ariz. 529, 541, ¶ 38, 124 P.3d 756, 768 (App. 2005).  To overcome this presumption, a party must prove "a hostile feeling or spirit of ill-will, or undue friendship or favoritism, towards one of the litigants."  *State v. Cropper*, 205 Ariz. 181, 185, ¶ 22, 68 P.3d 407, 411 (citation omitted), *supplemented by* 206 Ariz. 153, 76 P.3d 424 (2003).  "Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."  *State v. Henry*, 189 Ariz. 542, 546, 944 P.2d 57, 61 (1997) (quoting *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)).

**¶18**        Father has not rebutted the presumption of judicial impartiality.  Although we lack the transcript, the portions of the record available reflect the family court extensively and impartially considered the parties' positions and entered orders in the children's best interest.

**CONCLUSION**

**¶19**        The family court's order is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama

---

1962) (holding that the statements of a judge uttered in his official capacity and acting within the limits of his jurisdiction were absolutely privileged); *Lewis v. Linn*, 26 Cal. Rptr. 6, 8-9 (Cal. Dist. Ct. App. 1962) (recognizing that an absolute privilege applies to statements made from the bench); *see also Green Acres Trust v. London*, 141 Ariz. 609, 613, 688 P.2d 617, 621 (1984) (explaining that the absolute privilege generally applies to judicial proceedings and "protects judges, parties, lawyers, witnesses and jurors").